IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HALIDE GROUP, INC. | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 10-2392-TON |
| | : | |
| HYOSUNG CORPORATION | : | Action in Equity |
| | : | |
| *Defendant* | : | |

FILED
JUL 22 2010
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## FIRST AMENDED COMPLAINT SEEKING A PRELIMINARY INJUNCTION & DECLARATORY RELIEF

Plaintiff, HALIDE GROUP, INC., by and through its undersigned counsel and Law Firm of Choi & Associates, P.C., in support of this Complaint for a Preliminary Injunction and for Declaratory Judgment against HYOSUNG CORPORATION, avers as follows:

1. Plaintiff, Halide Group, Inc. (hereinafter referred to as "HGI" or "Halide"), is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office located at 700 Troxel Drive, Lansdale, Montgomery County, PA 19446.

2. Defendant, Hyosung Corporation (hereinafter referred to as "Hyosung"), is an entity organized and existing under the laws of the Republic of Korea. Upon information and belief, it maintains a principal place of business at 450 Gongdeok-dong, Mapo-ku, Seoul, Republic of Korea.

1

## JURISDICTION AND VENUE

3. Jurisdiction in this Honorable Court over Hyosung is maintained pursuant to 28 U.S.C. § 1332 (a)(2), since the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and the matter is between citizens of a State (Pennsylvania) and a citizen of a foreign state (the Republic of Korea).

## FACTS

4. On or about November 15, 2005, Plaintiff and Defendant entered into a written agreement for the design, engineering, and licensing of a Nitrogen Trifluoride (NF3) production facility to be constructed in Ulsan, South Korea (hereinafter "Agreement"). A full copy of the Agreement is attached to the Defendant's Motion to Dismiss, and is incorporated herein.

5. Under the terms of the Agreement, the Defendant was obligated to pay Plaintiff $1,750,000.00 as a license fee and $3,800,000.00 as an engineering fee for a total amount of $5,550,000.00 owed under the Agreement.

6. Under the terms of the Agreement, the license was to be used exclusively by Hyosung in Korea and in China (hereinafter referred to as "License").

7. Defendant has not yet paid approximately $41,000 of the amount due with regard to the engineering fee set forth in paragraph 5.

8. Defendant has not paid $1,500,000 of the agreed amount for the License.

9. Due to Defendant failing to pay in accordance with the terms of payments owed to Plaintiff, Plaintiff has suffered substantial difficulties with regard to its daily business operations, including but not limited to, bill payments, cash flow, and strained business relationships and litigation caused by Plaintiff's inability to pay its sub-contractor (MLEA) who participated in designing and setting up the plant.

10. On or about August 28, 2007, the plant produced, purified, and stored the product Nitrogen Trifluoride in the facility, and then compressed and packaged the Nitrogen Trifluoride into the first cylinder which was transported from the facility to a customer.

11. Despite Defendant not having paid the sums owed, in May of 2008, Defendant requested that Plaintiff assist Defendant in resolving specific operational issues at the facility for two months (June and July of 2008).

12. Despite the financial difficulties Plaintiff faced as a result of Defendant's non-payment, Plaintiff agreed to assist Defendant in resolving the specific plant operational issues, so long as Defendant made two additional payments of $75,000.00, which were to be considered an advance on the payment of the fifty (50%) percent of the License Agreement payment, which was due after completion of the Performance Guarantee Test.

13. The Defendant paid Plaintiff the first advance payment of $75,000.00 (paying a portion to the Korean government for taxes).

14. In or around June of 2008, the Defendant then arbitrarily claimed that the milestone performance target was not achieved, and the Defendant informed Plaintiff that the second payment of $75,000.00 was not going to be tendered.

3

15. Pursuant to Article 13 of the Agreement, the Performance Guarantee Test was to be performed within ninety (90) days after the date of the "start-up" of the manufacturing process.

16. Pursuant to Article 1.19 of the Agreement the plant Start-Up date, is defined as,

> *"the fact and the time when the Products are first being produced at the Plant with feeding in the main feedstock HF for Fluorine, Fluorine and Ammonia for Nitrogen Trifluoride respectively, under operating conditions described in the Operation Manual."*

17. Pursuant to Article 1.12 of the Agreement and Appendices 1 and 2, the "Performance Guarantee Test" means:

> *"[t]he production of each of the Products at the Plant for a continuous period of seventy-two (72) hours at full capacity as described in Appendix 1 and 2, in order to determine whether the results meet the specifications contained in Appendix 1 and 2, consumption of raw material and utilities in Appendix 1 and the design capacity described in Article 2."*

True and correct copies of the lengthy Appendices 1 and 2 are attached to the Defendant's Motion to Dismiss, and are incorporated herein.

18. Pursuant to Article 13.6 of the Agreement, successful completion of the plant is defined as:

> *"the successful performance of the Performance Guarantee Test and/or at least one Additional Test shall be considered as a successful completion of the Plant. Hyosung shall provide to HGI a certificate signed by its duly authorized officer certifying that the Plant meets or exceeds the Guarantee Values as described in Article 13.4."*

19. Pursuant to the Agreement, upon completion of the Performance Guarantee Test within the stated parameters, Defendant was obligated to promptly pay Plaintiff the final payments for the License Fee and other agreed sums, within one (1) month after receiving HGI's invoice and issuing Certificate of Performance Guarantee.

20. Pursuant to the Agreement, the issuing of the Mechanical Completion Date Document was to trigger the cooperative action of the parties toward the execution of the Performance Guarantee Test ("PGT"), as mutually agreed to by both parties, the PGT was initially deferred until some operational problems in the plant were solved.

21. The Defendant has refused to issue a Mechanical Completion Date document as required under the Agreement in Article 1.10, despite the fact that the plant is mechanically complete.

22. By Defendant refusing to issue the Mechanical Completion Date Document, as required under the Agreement, Defendant has thereby avoided the PGT.

23. In or around February 6, 2009, Plaintiff proposed to the Defendant, in writing, and again verbally in December of 2009 to conduct the PGT but the Defendant refused.

24. Upon information and belief, Hyosung has been operating the plant at full capacity since in or around January of 2009 to the present.

25. Hyosung is currently using the License contemplated under the Agreement.

26. Hyosung has not paid for the License.

27. Upon information and belief, Hyosung is still utilizing the License.

28. Hyosung's use of the License without having been compensated is causing serious damage and irreparable harm to Halide.

29. Based upon information it has been able to ascertain, Halide reasonably anticipates that Hyosung will try to maintain exclusivity of the License, despite not having paid for it.

30. If the agreement is to be honored, Halide is not able to do other business in China and Korea and utilize the License it designed.

31. Hyosung has breached the Agreement by not declaring the plant Mechanically Complete, despite the fact that it is fully operational, by refusing to issue the Mechanical Completion Certification, and refusing to conduct the PGT in 2009, and by refusing to pay Halide the sums due and owing under the Agreement.

32. Halide has demanded payment from Hyosung on numerous occasions, but Hyosung refuses to make the final payments, claiming that Plaintiff somehow (without specificity) breached the Agreement, and that said breach justifies non-payment of the money, in particular the License fee owed to Plaintiff.

33. Halide has performed all of its duties under the contact, to the extent that it has been permitted to do so, in light of the repeated refusal by Hyosung to share relevant technical and plant performance information, to generate data requested by the Plaintiff to solve specific plant problems, and to allow access to its relevant facilities.

34. As of the date of this filing, Hyosung still owes Halide a total of $1,541,000.00.

35.   Pursuant to Article 21.1 of the Agreement, which states in pertinent part:

> Each party shall maintain as confidential any Confidential Information (as defined below) obtained from the other party or any of its affiliates under or in connection with this Agreement and shall not divulge the same to any third party, or make use thereof without the prior written consent of the disclosing party. Notwithstanding the foregoing, the parties may disclose confidential information to their legal advisors, financial advisors, and employees as necessary for the performance of their obligations under this Agreement, and in the case of Hyosung, to the Extendee and LEC; provided, however, the parties shall cause such individuals or entities to adhere to the confidentiality requirements of this Article 21. "Confidential Information" shall mean all information, data, records, reports, know-how, and agreements, including the Process and Technical Information, disclosed by one party to the other party in writing, orally or by electronic or other media. Upon request, the receiving party shall return or certify the destruction of all Confidential Information in its possession.

36.   Upon information and belief, Hyosung has interfered with Halide's business by releasing Confidential Information to other companies.

37.   Pursuant to Article 2.1 of the Agreement, "HGI [Halide] hereby grants to Hyosung a license with the exclusive right in Korea and China to use any intellectual property right, and Technical Information in order to construct, operate and maintain the Plant or Additional Plants, and to produce, sell, and export the Products."

38.   Currently, Halide is negotiating a contract with a company in China to do work which would require utilizing information in Hyosung's license.

39.   It is imperative that Hyosung cease and desist using the license and any Technical Information obtained as a result of their business dealings with Halide.

## COUNT I – ACTION FOR DECLARATORY JUDGMENT

40. Plaintiff incorporates the allegations contained in paragraphs 1 through 40 as if fully set forth at length herein.

41. Plaintiff seeks a declaratory judgment to clarify the rights and duties of the parties to the Agreement.

42. There now exists between the parties an actual justiciable controversy, which entitles Plaintiff to have a declaration of its rights under the Agreement, in light of the facts, conditions, and circumstances as set out.

43. By its conduct, Hyosung abandoned the protocol in the Agreement for determining completion and entitlement to payment, unilaterally imposed other undisclosed terms, and then claimed "a breach" (without specification) as a justification for non-payment.

44. Since Hyosung has refused to pay Halide as specified in the Agreement and prevented the undertaking of the PGT, it cannot legally justify a claim of failure to meet the performance test parameters.

45. A declaratory judgment will resolve the dispute created by the Defendant for refusing to pay the sums due to Plaintiff as set forth in the Agreement and in above paragraphs, and will resolve any uncertainty regarding the legal status and rights of the parties under the Agreement.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order:

A. Issuing a declaration under the Declaratory Judgment Act, 42 Pa.C.S. §§ 7351, et seq. establishing that Plaintiff's conduct has NOT breached the Agreement between the parties;

B. Issuing a declaration declaring that Defendant has not paid for the license, and still must pay $1,500,000.00 before it has any right to make use of the license.

C. Issuing a declaration that Defendant has an obligation to pay the entire remaining balance owed for engineering fees under the contract, $41,000.

D. Award a just amount of attorneys' fees, interest, and court costs incurred in the filing and pursuit of the instant action to the Plaintiff; and

E. Directing such other and further relief that the Court deems just and appropriate under the circumstances.

## COUNT II – ACTION FOR INJUNCTIVE RELIEF

46. Plaintiff incorporates the allegations contained in paragraphs 1 through 56 as if fully set forth at length herein.

47. Plaintiff will suffer immediate and irreparable harm if Hyosung is permitted to continue to use Halide's technology.

48. The technology is unique and monetary damages are an inadequate remedy at law.

49. The technology is currently being utilized by the Defendant with full knowledge by the Defendant that the technology has been fraudulently kept and maintained by the Defendant with the intent to not compensate Plaintiff.

50. The Technology is utilized by the Defendant in the operation of their NF3 plant in Korea.

51. Upon information and belief, the Defendants may be utilizing the Technology in other plants throughout Korea and China.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an Order, pursuant to Plaintiff's Motion being filed with this Amended Complaint, imposing a Preliminary Injunction restraining Defendant from further use of the Technology until such time as the dispute between the parties has been addressed by declaratory judgment or any arbitration that may follow.

RESPECTFULLY SUBMITTED,
CHOI & ASSOCIATES, P.C.

Brian E. Appel    4796

Date: July 21, 2010

By: _____
Brian Appel, Esquire
Jennifer Zegel, Esquire
(215) 782-2200
Attorneys for Plaintiff

## VERIFICATION

I, J. Peter Hobbs, hereby verify that I am a the President of the Plaintiff, Halide Group, Inc., in this matter; that I am authorized to make this verification on its behalf; and that the statements made in the foregoing Amended Complaint and Motion for Injunction are true and correct to the best of my knowledge, information and belief. I understand the statements therein are made subject to the penalties relating to unsworn falsification to authorities.

Halide Group, Inc.

Date: July 20/2010     By: _____
                             J. Peter Hobbs, President