IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


HALIDE GROUP, INC.                          :
    *Plaintiff*                          :
    v.                                   :    CA No.  10-02392   (TON)
                                         :
HYOSUNG CORPORATION                         :
    *Defendant*

## FIRST AMENDED MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, HALIDE GROUP, INC., by its undersigned counsel and the Law Firm of Choi & Associates, P.C., hereby moves this Honorable Court to enter a preliminary injunction to provide immediate relief needed to prevent further legal harm to Plaintiff, and to preserve the status quo until determination of the rights of the parties pursuant to Rule 65, *et. seq.* of the Federal Rules of Civil Procedure and, in support thereof, aver as follows:

1.     Plaintiff, Halide Group, Inc. (hereinafter referred to as "HGI" or "Halide"), is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office located at 700 Troxel Drive, Lansdale, Montgomery County, PA 19446.

2.     Defendant, Hyosung Corporation (hereinafter referred to as "Hyosung"), is an entity organized and existing under the laws of the Republic of Korea.  Upon information and belief, it maintains a principal place of business at 450 Gongdeok-dong, Mapo-ku, Seoul, Republic of Korea.

3.      Plaintiff bases this motion on the verified Amended Complaint, the Agreement and Appendix (already of record as attachments to Hyosung's Motion to Dismiss), the supporting Memorandum of Law, and whatever evidence and argument may be presented at the hearing of this motion.

4.      On or about November 15, 2005, Plaintiff and Defendant entered into a written agreement for the design, engineering, and licensing of a Nitrogen Trifluoride (NF3) production facility to be constructed in Ulsan, South Korea (hereinafter "Agreement"). A full copy of the Agreement is attached to the Defendant's Motion to Dismiss, and is incorporated herein.

5.      Under the terms of the Agreement, the Defendant was obligated to pay Plaintiff $1,750,000.00 as a license fee and $3,800,000.00 as an engineering fee for a total amount of $5,550,000.00 owed under the Agreement.

6.      Under the terms of the Agreement, the license was to be used exclusively by Hyosung in Korea and in China (hereinafter referred to as "License").

7.      Defendant has not yet paid approximately $741,000 of the amount due with regard to the engineering fee set forth in paragraph 5.

8.      Defendant has not paid $800,000 of the agreed amount for the License as set forth in paragraph 5.

9.      Due to Defendant failing to pay in accordance with the terms of payments owed to Plaintiff, Plaintiff has suffered substantial difficulties with regard to its daily business operations, including but not limited to, bill payments, cash flow, and strained business relationships and litigation caused by Plaintiff's inability to pay its sub-contractor (MLEA) who participated in designing and setting up the plant.

2

10.     On or about August 28, 2007, the plant produced, purified, and stored the product Nitrogen Trifluoride in the facility, and then compressed and packaged the Nitrogen Trifluoride into the first cylinder which was transported from the facility to a customer.

11.     Despite Defendant not having paid the sums owed, in May of 2008, Defendant requested that Plaintiff assist Defendant in resolving specific operational issues at the facility for two months (June and July of 2008).

12.     Despite the financial difficulties Plaintiff faced as a result of Defendant's non-payment, Plaintiff agreed to assist Defendant in resolving the specific plant operational issues, so long as Defendant made two additional payments of $75,000.00, which were to be considered an advance on the payment of the fifty (50%) percent of the License Agreement payment, which was due after completion of the Performance Guarantee Test. The Defendant paid Plaintiff the first advance payment of $75,000.00 (paying a portion to the Korean government for taxes).

13.     In or around June of 2008, the Defendant then arbitrarily claimed that the milestone performance target was not achieved, and the Defendant informed Plaintiff that the second payment of $75,000.00 was not going to be tendered.

14.     Pursuant to Article 13 of the Agreement, the Performance Guarantee Test was to be performed within ninety (90) days after the date of the "start-up" of the manufacturing process.

15.     Pursuant to Article 1.19 of the Agreement the plant Start-Up date, is defined as:

> "the fact and the time when the Products are first being produced at the Plant with      feeding in the main feedstock HF for Fluorine, Fluorine and Ammonia for

*Nitrogen Trifluoride respectively, under operating conditions described in the Operation Manual."*

16.     Pursuant to Article 1.12 of the Agreement and Appendices 1 and 2, the "Performance Guarantee Test" means:

> *"[t]he production of each of the Products at the Plant for a continuous period of seventy-two (72) hours at full capacity as described in Appendix 1 and 2, in order to determine whether the results meet the specifications contained in Appendix 1 and 2, consumption of raw material and utilities in Appendix 1 and the design capacity described in Article 2."*

True and correct copies of the lengthy Appendices 1 and 2 are attached to the Defendant's Motion to Dismiss, and are incorporated herein.

17.     Pursuant to Article 13.6 of the Agreement, successful completion of the plant is defined as:

> *"the successful performance of the Performance Guarantee Test and/or at least one Additional Test shall be considered as a successful completion of the Plant. Hyosung shall provide to HGI a certificate signed by its duly authorized officer certifying that the Plant meets or exceeds the Guarantee Values as described in Article 13.4."*

18.     Pursuant to the Agreement, upon completion of the Performance Guarantee Test within the stated parameters, Defendant was obligated to promptly pay Plaintiff the final payments for the License Fee and other agreed sums, within one (1) month after receiving HGI's invoice and issuing Certificate of Performance Guarantee.

19.     Pursuant to the Agreement, the issuing of the Mechanical Completion Date Document was to trigger the cooperative action of the parties toward the execution of the Performance Guarantee Test ("PGT"), as mutually agreed to by both parties, the PGT was initially deferred until some operational problems in the plant were solved.

20.     The Defendant has refused to issue a Mechanical Completion Date document as required under the Agreement in Article 1.10, despite the fact that the plant is mechanically complete.

21.     By Defendant refusing to issue the Mechanical Completion Date Document, as required under the Agreement, Defendant has thereby avoided the PGT.

22.     In or around February 6, 2009, Plaintiff proposed to the Defendant, in writing, and again verbally in December of 2009 to conduct the PGT but the Defendant refused.

23.     Upon information and belief, Hyosung has been operating the plant at full capacity since in or around January of 2009 to the present.

24.     Hyosung is currently using the License contemplated under the Agreement.

25.     Hyosung has not paid for the License.

26.     Upon information and belief, Hyosung is still utilizing the License.

27.     Upon information and belief, Hyosung is profiting considerably from the License.

28.     Hyosung has not paid the balance of the engineering fee even though the engineering is complete.

29.     Hyosung's use of the License without having compensated Halide is causing serious damage and irreparable harm to Halide.

30.     Based upon information it has been able to ascertain, Halide reasonably anticipates that Hyosung will try to maintain exclusivity of the License, despite not having paid for it.

31.     If the agreement is to be honored, Halide is not able to do other business in China and Korea and utilize the License it designed.

32.     Hyosung has breached the Agreement by not declaring the plant Mechanically Complete, despite the fact that it is fully operational, by refusing to issue the Mechanical Completion Certification, and refusing to conduct the PGT in 2009, and by refusing to pay Halide the sums due and owing under the Agreement.

33.     Halide has demanded payment from Hyosung on numerous occasions, but Hyosung refuses to make the final payments, claiming that Plaintiff somehow (without specificity) breached the Agreement, and that said breach justifies non-payment of the money, in particular the License fee owed to Plaintiff.

34.     Halide has performed all of its duties under the contact, to the extent that it has been permitted to do so, in light of the repeated refusal by Hyosung to share relevant technical and plant performance information, to generate data requested by the Plaintiff to solve specific plant problems, and to allow access to its relevant facilities.

35.     A Declaratory Action was filed in Montgomery County Court of Common Pleas on April 20, 2010.

36.     After service of the complaint, Defendant, removed the case to this Honorable Court on or about May 20, 2010, and thereafter filed a Motion to Dismiss.

37.     As of the date of the filing of this Motion, Hyosung still owes Halide a total of $1,541,000.00.

38.     Pursuant to Article 21.1 of the Agreement, which states in pertinent part:

> Each party shall maintain as confidential any Confidential Information (as defined below) obtained from the other party or any of its affiliates under or in connection with this Agreement and shall not divulge the same to any third party, or make use thereof without the prior written

consent of the disclosing party. Notwithstanding the foregoing, the parties may disclose confidential information to their legal advisors, financial advisors, and employees as necessary for the performance of their obligations under this Agreement, and in the case of Hyosung, to the Extendee and LEC; provided, however, the parties shall cause such individuals or entities to adhere to the confidentiality requirements of this Article 21. "Confidential Information" shall mean all information, data, records, reports, know-how, and agreements, including the Process and Technical Information, disclosed by one party to the other party in writing, orally or by electronic or other media. Upon request, the receiving party shall return or certify the destruction of all Confidential Information in its possession.

39.     Upon information and belief, Hyosung has interfered with Halide's business by releasing Confidential Information to other companies.

40.     Currently, Halide is negotiating a contract with a company in Korea to do work which would require utilizing information in Hyosung's license.

41.     It is imperative that Hyosung cease and desist using the license and any Technical Information obtained as a result of their business dealings with Halide.

42.     Plaintiff has suffered immediate and irreparable harm and will continue to suffer irreparable harm if Hyosung is permitted to continue to use Halide's technology.

43.     The technology is unique and monetary damages are an inadequate remedy at law.

44.     The technology is currently being utilized by the Defendant with full knowledge by the Defendant that the technology has been fraudulently kept and maintained by the Defendant with the intent to not compensate Plaintiff.

45.     The Technology is utilized by the Defendant in the operation of their NF3 plant in Korea.

46.     Upon information and belief, the Defendants may be utilizing the Technology in other plants throughout Korea and China.

47.     Defendant will not suffer any appreciable injury if the Temporary Restraining Order and Preliminary Injunction are granted because:

    a.   The status quo will be maintained;

    b.   Defendant's unconscionable actions are unlawful and contrary to equity;

    c.   There is no justification for Defendant's actions since all parties are aware that there is a dispute in ownership of the License;

    d.   Defendant will have timely Notice of the compliant for this action;

48.     There is much greater immediate and irreparable harm to the Plaintiff if a Preliminary Injunction is not granted than to Defendant if they are granted.

49.     Immediate Court action is required to prevent imminent and irreparable economic harm to Plaintiff and Plaintiff's investment in the License since Defendant intends to keep utilizing the License without compensating Plaintiff until there is an Arbitration hearing in Korea (under the Agreement the Defendant's country will host the Arbitration); therefore, Plaintiff has no adequate remedy at law to timely protect the License from fraudulent use and prevent permanent damage.

50.     The Amended Petition for the Preliminary Injunction and Memorandum of Law in Support of the Petition Preliminary Injunction, and the Second Amended Complaint will be timely provided to the Defendant.

51.     Defendant's wrongful conduct is actionable and Plaintiff's right is clear since Plaintiff is the true owner of the License, only an injunction is reasonably situated to timely abate Defendant's wrongful conduct.

8

52.     Plaintiff is likely to succeed on the merits of these claims because Plaintiff has fully performed under the Agreement.

53.     Since the subject matter, at issue, under the contract is unique Plaintiff is entitled to the equitable relief sought in this action because monetary damages would be inadequate.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an Order enjoining the Defendant, its officers, agents, servants, employees, and attorneys, and any and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, regarding the proprietary information encompassed in the license pursuant to the Agreement (including any aspect of the technology described therein):

1.  From Selling or otherwise distributing the technology (or any variation thereof) to any person or business in Korea or China;

2.  From manufacturing, promoting, offering for sale, and/or distributing F2, NF3 or any other product it is manufacturing by virtue of having obtained the License pursuant to the Agreement with Halide, as set forth in the verified Amended Complaint;

3.  Requiring Hyosung to immediately cancel and withdraw from transit arrangements all pending orders for purchase of the product(s) manufactured at its plant in South Korea;

4.  Requiring defendant to immediately cancel and withdraw all promotional and/or advertisements that refer to any materials produced at the plant;

5.  The court issue a temporary injunction at the conclusion of the initial hearing, restraining the Defendant from performing the acts specified in this prayer for relief;

6.  A date setting a final hearing on the merits is appointed and, at the conclusion of that hearing, the temporary injunction be made permanent;

7.  At the final hearing, Defendant be ordered to pay to the Plaintiff damages in an amount within the court's jurisdiction;

8.  The court award Plaintiff reasonable costs of suit and attorneys' fees; and

9.    Such other and further relief as this Court deems just.

Respectfully Submitted,

CHOI AND ASSOCIATES, P.C.

Brian E. Appel, Esquire
Jennifer Zegel, Esquire
Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


HALIDE GROUP, INC.    :
   *Plaintiff*     :
   v.       :   CA No.  10-02392   (TON)
           :
HYOSUNG CORPORATION   :
   *Defendant*

## CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the Motion and Memorandum are being served upon counsel for Defendant by the Court's electronic filing system, and also by email, as follows:

     Barry M. Klayman, Esq
     Cozen O'Connor
     Suite 1400, Chase Manhattan Centre
     1201 North Market Street
     Wilmington, Delaware 19801


     bklayman@cozen.com


          /s/ Brian E. Appel
          _____
          BRIAN E. APPEL, ESQUIRE