IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HALIDE GROUP, INC. | : | CIVIL ACTION |
| | : | NO. 10-02392 |
| v. | : | |
| | : | |
| HYOSUNG CORPORATION | : | |
| | : | |

O'NEILL, J.                                                    November 8, 2010

**<u>MEMORANDUM</u>**

On or about November 15, 2005, plaintiff Halide Group, Inc. entered into a contract with defendant Hyosung Corporation for the design, engineering, and licensing of a Fluorine (F2) Gas and Nitrogen Trifluoride (NF3) Gas production facility to be constructed in Ulsan, South Korea.[1] Halide seeks a declaration that it has not breached the Agreement and that Hyosung has an obligation to pay it the remaining balance due under the contract. Halide also seeks a preliminary injunction restraining Hyosung from the use of Halide's technology pending a resolution of the dispute between the parties.

Now before me are Halide's first amended motion for a preliminary injunction, Hyosung's motion to dismiss plaintiff's second amended complaint in favor of arbitration and the parties' responses to each.[2]

---

      1       Halide is a Pennsylvania corporation, with its principal place of business in Lansdale, Pennsylvania. Hyosung is a corporation organized and existing under the laws of the Republic of Korea with its principal place of business in Seoul, Korea.

      2       Halide's response to Hyosung's motion to dismiss was untimely. Any response to defendant's motion should have been filed by Monday September 20, 2010. Rule 7.1(c) of the Local Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania provides in pertinent part that "any party opposing [a] motion shall serve such

For the reasons that follow, I will grant Hyosung's motion to dismiss plaintiff's second amended complaint[3] and will deny Halide's motion for a preliminary injunction.

BACKGROUND

Pursuant to Article 2.1 of the Agreement, Hyosung agreed to pay Halide a $1,750,000.00 license fee for "a license with the exclusive right in Korea and China to use any intellectual property right and Technical Information in order to construct, operate and maintain the [Ulsan] Plant or Additional Plants, and to produce, sell, and export the Products [F2 Gas and NF3 Gas]" (the "License"). Pursuant to Article 3.1 of the Agreement Hyosung also agreed to pay Halide a $3,800,000 engineering fee for a Basic Engineering Design Package, a Detail Engineering Design Package, Technical Services, Training, and Procurement Services (all as defined in the Agreement) and other services if requested by Hyosung and mutually agreed to by the parties. Halide asserts that Hyosung has not yet paid it $741,000 of the engineering fee and $800,000 of the license fee. Hyosung does not deny that it has withheld certain payments from Halide.

---

answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief, except that in the case of a motion under Fed. R. Civ. P. 12(b) . . . the opposing party shall respond within twenty-one (21) days." Rule 6(d) of the Federal Rules of Civil Procedure allows for an additional three days for service following service by electronic filing of any motion to which a response is due.
    Local Rule 7.1(c) provides that "[i]n the absence of timely response, [a] motion may be granted as uncontested . . . ." However, as defendant has not moved to strike plaintiff's untimely response, any objection to the timeliness of the response has been waived.

[3] In its Motion to Dismiss, Hyosung argues that Halide's first and second amended complaints should be struck because they were filed without either Hyosung's consent or this Court's leave to amend as required by Rule 15 of the Federal Rules of Civil Procedure. Because I find that this matter is subject to dismissal under the facts alleged in any version of Halide's complaint, I will deny Hyosung's motion to strike the first and second amended complaints as moot.

Instead, Hyosung asserts that Halide breached the Agreement and that it has properly withheld payment from Halide pursuant to Article 14 of the Agreement. Halide disputes the allegation that it has breached the Agreement and thus disputes the propriety of Hyosung's withholding of payments. Halide also contends that Hyosung has no right to use the License until Hyosung has paid the remaining balance due for the License under the Agreement.

Article 23.7 of the Agreement provides for arbitration of disputes as follows:

> <u>Arbitration</u>. The parties shall use best efforts to negotiate and amicably resolve any dispute or claim arising out of or in connection with this Agreement. Any such dispute or claim which cannot be settled amicably by the parties hereto shall be finally resolved by arbitration in the defendant's country. The arbitration proceedings shall be conducted in the English language by a panel of three arbitrators, with one arbitrator selected by each of the parties, and the third arbitrator selected by the two arbitrators selected by the parties. Any award rendered shall be final and binding on the parties and judgment may be entered thereon in any competent jurisdiction. Notwithstanding the foregoing, either party hereto may seek preliminary injunctive relief from any court of competent jurisdiction pending the outcome of such arbitration proceedings.

Absent an amicable resolution of the dispute between the parties, Halide filed this action. No arbitration proceeding has been commenced between the parties.

## DISCUSSION

### I. Count I: Declaratory Judgment

Count I of Halide's second amended complaint seeks a declaratory judgment that Halide's conduct has not breached the Agreement and that it is owed the remaining balance due under the Agreement. In its motion to dismiss, Hyosung asserts that Halide's claims must be dismissed in favor of arbitration as the parties agreed to a provision requiring the parties to

arbitrate "any dispute or claim arising out of or in connection with th[e] Agreement." Def.'s Mot. to Dismiss Second Am. Compl. Ex. A, pp. 26-27, art. 23.7. In response, Halide does not dispute the validity of the Agreement's arbitration clause but instead asks me to "decide whether or not there is a need for any arbitration" by issuing the requested declaratory judgment. Pl.'s Resp. to Def.'s Mot., p. 2. Although a party such as Halide which is reluctant to arbitrate"has a right to a judicial determination of [its] obligation to arbitrate," PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 515 (3d Cir. 1990), overruled on other grounds by Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85 (2002), the Court's function is "very limited [if] the parties have agreed to submit all questions of contract interpretation to the arbitrator." Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001) (internal citations omitted). If declaratory relief is sought, the Court need not exercise jurisdiction over that claim "if it determines that issuing a declaratory judgment would serve no useful purpose." Aluminum Co. of Am. v. Beazer East, Inc., 124 F.3d 551, 560 (3d Cir. 1997).

The Federal Arbitration Act (FAA) applies to written arbitration provisions contained in any contract evidencing a transaction involving interstate or foreign commerce. 9 U.S.C. §§ 1-2. Under the FAA "if there is a valid agreement to arbitrate, there is a general presumption in favor of arbitration." Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co., 638 F. Supp. 2d 443, 450 (E.D. Pa. 2009). "Any ambiguity as to whether a particular dispute falls within the ambit of an arbitration clause must be resolved in favor of arbitration." Sarl v. A.M. Todd Co., No. 07-2727, 2008 WL 724607, at *7 (E.D. Pa. Mar. 18, 2008). "The presumption in favor of arbitration carries 'special force' when international commerce is involved . . . ." Sandvik AB v. Advent Intern. Corp., 220 F.3d 99, 104 (3d Cir. 2000), citing Mitsubishi Motors Corp. v. Soler Chrysler

Plymouth, Inc., 473 U.S. 614, 631 (1985).  Because there is no dispute as to whether Halide and Hyosung entered into a valid arbitration agreement, in determining whether arbitration is the proper forum for resolution of the claims asserted in this action I must ask only whether the dispute between Halide and Hyosung lies within the scope of the arbitration agreement.  Neurosource, Inc. v. Jefferson Univ. Physicians, No. 00-5401, 2001 WL 180264, at *2 (E.D. Pa. Feb. 14, 2001) ("The FAA limits the role of courts to determine whether the parties entered into a valid arbitration agreement and whether the specific dispute falls within the scope of that agreement.").  If the dispute falls within the scope of the arbitration clause, I may not proceed to consider the merits of the parties' claims.  Great W. Mtge. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997) ("the district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate").

I find that the dispute between Halide and Hyosung with respect to whether the parties have breached their respective obligations under the Agreement clearly lies within the scope of the Agreement's broadly worded arbitration clause.  Similar arbitration provisions providing that "any controversy, claim or dispute arising out of or relating" to an agreement have been held to be "of the broadest nature."  TMG Health, Inc. v. United Health Group, Inc., No. 07-115, 2007 WL 1258133, at * 1 (E.D. Pa. Apr. 27, 2007), see also Medtronic AVE Inc. v. Cordis Corp., 100 F. App'x 865, 869 (3d Cir. 2004) (finding that when an arbitration clause refers to all matters "arising from" an agreement, it "overwhelmingly suggests that a given dispute is arbitrable."); Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) ("when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction").

Halide points to no evidence that would support a finding that its grievance should be excluded from arbitration. See AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (citations and internal quotations omitted) (holding that when an arbitration clause is "broad" a party must point to either an "express provision excluding a particular grievance from arbitration" or "forceful evidence of a purpose to exclude the claim from arbitration"). Indeed, in its response to Hyosung's motion to dismiss, Halide appears to concede that arbitration would be required regardless of my determination with respect to its claim for a declaratory judgment. See Pl.'s Resp. Br. at pp. 2-3. ("If the Court determines that Halide breached the Agreement, arbitration would still determine whether the liquidated damages taken by Hyosung pursuant to the Agreement are properly accounted for. . . . If the Court determines that Halide did not breach the Agreement by failing to solve all the start up problems in a 'timely' manner, Halide will have non-speculative justification for initiating arbitration in Korea.").

Because I find that the dispute between Halide and Hyosung lies within the scope of the arbitration clause, I may not issue Halide's requested declaratory judgment as to the merits of its claims – i.e., whether it is due any outstanding payments pursuant to the Agreement and whether Hyosung has a right to use the License absent further payment to Halide. It is the province of the arbitrator and not the Court to interpret a contract where there is a "plausible" claim of arbitrability. Sarl v. A.M. Todd Co., No. 07-2727, 2008 WL 724607, at *7 (E.D. Pa. Mar. 18, 2008), citing Medtronic AVE, Inc., 247 F.3d at 55. Accordingly, I will dismiss Count I of

Halide's second amended complaint without prejudice.[4]

## II. Count II: Injunctive Relief

Citing the language in the arbitration clause permitting either party to "seek preliminary injunctive relief pending the outcome of any arbitration proceeding, Count II of Halide's Second Amended Complaint seeks an injunction restraining Hyosung from further use of technology supplied by Halide "until such time as the dispute between the parties has been addressed by declaratory judgment or any arbitration that may follow."  Because Halide and Hyosung must arbitrate the merits of their dispute in accordance with the Agreement, I must be mindful not to supplant the role of the arbitrator in determining whether injunctive relief is appropriate.  See H2O To Go, LLC v. Martinez, No. 05-21353, 2005 WL 2065220, at *4-5 (S.D. Fla. Aug. 22, 2005) (holding "arbitration clause alters the authority of the Court significantly in deciding whether, and to what extent, a preliminary injunction should be entered"); Baychar, Inc. v. Frisby Techs., No. 01-CV-28-B-S, 2001 WL 856626, at *9 (D. Me. Jul. 26, 2001) (denying motion for preliminary injunction where consideration of plaintiff's arguments in favor of the preliminary injunction would require the Court to usurp the role of the arbitrator).

An injunction is "an extraordinary remedy, which should be granted only in limited circumstances."  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989).  The Court of Appeals has held that "a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the prerequisites for such relief are satisfied."  Ortho

---

[4] I note that neither party has requested a stay of this matter pending arbitration. The Court of Appeals has held that where all of the issues raised in a suit are subject to binding arbitration the court may dismiss rather than stay the action.  Seus v. John Nuveen Co., Inc., 146 F.3d 175, 179 (3rd Cir. 1998).

Pharm. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir. 1989). To establish that injunctive relief is warranted here, Halide must demonstrate: (1) irreparable injury if relief is not granted to prevent a change in the status quo pending the outcome of an arbitration; (2) a reasonable probability of eventual success on its claims; (3) that the possibility of harm to other interested persons if injunctive relief is granted would not outweigh the harm it will suffer if injunctive relief is denied; and (4) that the injunction it seeks will serve the public interest. Id. at 812-13, see also Thompson v. Nienaber, 239 F. Supp. 2d 478, 485 n.9 (D.N.J. 2002) (identifying the four factors to be considered in ascertaining the propriety of a preliminary injunction in an arbitrable matter). "All four factors should favor preliminary relief before the injunction will issue." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992), see also P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."). Because I find that Halide cannot meet its burden of establishing that it will be irreparably harmed if I do not grant its request for injunctive relief, I will dismiss Count II of Halide's Second Amended Complaint and need not consider whether Halide has met its burden with respect to the remaining elements.[5]

"[T]he specter of arbitration alone is not enough to establish irreparable harm; the potential outcome of the arbitration still must satisfy the four-part analysis for preliminary

---

[5] Rule 65(a) of the Federal Rules of Civil Procedure "does not make a hearing a prerequisite for ruling on a preliminary injunction." Bradley v. Pittsburgh Bd. of Ed., 910 F.2d 1172, 1175 (3d Cir. 1990). "[A] district court is not obligated to hold a hearing when the movant has not presented a colorable factual basis to support . . . the contention of irreparable harm." Id. at 1176. See also, Miller v. Hoffman, No. 97-7987, 1998 WL 150970, at * 4 (E.D. Pa. Mar. 26, 1998)(denying plaintiff's motion for a preliminary injunction without a hearing where "the plaintiff clearly cannot show irreparable harm").

injunctions, including the irreparable harm prong." KP First Ave., L.P. v. Prentiss Props. Acquisition Partners, L.P., No. 01-1396, 2001 WL 438416, at *7 (E.D. Pa. Apr. 26, 2001). An injury warranting a preliminary injunction must "be of a peculiar nature, so that compensation in money cannot atone for it . . . ." Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir.1994); see also Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992) ("In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.") "In a contract dispute, where damages are a readily available remedy, proving irreparable harm entails specific and compelling proof since it is well established that a plaintiff in a breach of contract case cannot routinely convert monetary harm into irreparable harm." Susquehanna Commercial Fin., Inc. v. Vascular Res., Inc., No. 09-2012, 2010 WL 95127, at *6 (M.D. Pa. Jan. 6, 2010) (citations and internal quotation omitted).

In support of its claim of irreparable harm, Halide states that Hyosung "may be utilizing the technology in other plants throughout Korea and China." Second Am. Comp. at ¶ 54. Although Halide asserts that its technology is "unique," its ultimate concern is not protection of the technology but rather the receipt of appropriate compensation from Hyosung for the License. Indeed, if an arbitrator finds that Hyosung is not in breach of the Agreement, it may freely exercise its exclusive rights in Korea and China to utilize the technology pursuant to the terms of the License. If instead Halide were to prevail on its claims at arbitration and an arbitrator were to agree with Halide that Hyosung is in breach of the Agreement, Hyosung would owe Halide monetary damages in the form of the remainder of the contract price, an amount which is explicit and liquidated. "[T]he availability of adequate monetary damages belies a claim of irreparable

injury." Steven B. Golden Assocs., Inc. v. Royal Consumer Prods., LLC, No. 09-3890, 2009 WL 2914366, at * 3 (E.D. Pa. Sep. 10, 2009).

Halide complains that Hyosung is "free to make money without ever disclosing the ways in which they are using the licensed information or where." Pl.'s First Am. Mot. for a Prelim. Inj. at p. 8. Halide argues that without injunctive relief it "will have no way to recoup Hyosung's profits from the License following the conclusion of this litigation or a subsequent arbitration." Id. However, while it may be difficult for Halide to determine the amounts that Hyosung may have received if Hyosung has used the License without having a right to do so, money damages can compensate Halide for any harm it may have suffered. The Court of Appeals has held that "[a]n inability to precisely measure financial harm does not make that harm irreparable or immeasurable." Acierno, 40 F.3d at 655. Hyosung may be ordered to compensate Halide for any profits it may have improperly received as a result of the breach. See Frank's GMC Truck Ctr, Inc. v. General Motors, Corp., 847 F.2d 100, 102 (3d Cir. 1988) (holding no irreparable harm where, "[e]ven assuming for purposes of argument that [plaintiff's] assertions are true and that it will in fact suffer substantial lost profits as a result of [defendant's alleged breach], the harm flowing therefrom is compensable by money damages").

Halide further asserts that it will be irreparably harmed because: (1) Halide is negotiating a contract and/or contracts with companies in China and/or Korea "to do work which would require utilizing information in Hyosung's license," Second Am. Compl. at ¶ 38 and Pl.'s First. Am. Mot. for Prelim Inj. at ¶ 40; and (2) Halide "has had discussions with a U.S. Company that is exploring a contract to build a plant in China, with the technical assistance of Halide," Pl.'s Resp. to Def.'s Ans. Opp. Pl.'s First Am. Mot. for Prelim. Inj., at p. 6. Despite Halide's assertion

to the contrary, "a plaintiff in a breach of contract case cannot convert monetary harm into irreparable harm simply by claiming that the breach of contract has prevented it from performing contracts with others . . . ." Bennington Foods LLC v. St. Croix Renaissance Group, LLP, 528 F.3d 176, 178-79 (3d Cir. 2008); see also Manganaro v. Interoptec Corp., 874 F. Supp. 660, 662 (E.D. Pa. 1995) ("loss of sales and loss of business reputation . . . are all harms that can be remedied legally").

Finally, Dr. Madu Anand states that Halide "has cut 2 people because of non-payment" and that a subcontractor "has had significant financial issues because of nonpayment of balance of engineering fee (for which it has brought suit against Halide)." Decl. of Dr. Madu Anand at ¶ 26. The Court of Appeals has held that allegations of even more dire consequences are insufficient to support a plaintiff's claim of irreparable harm. In Instant Air Freight v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989), the plaintiff claimed that absent injunctive relief its "business will be completely destroyed, its employees and jobs will be lost and its goodwill and business reputation will be ruined." The Court concluded that the plaintiff failed to prove irreparable harm where it had "no clear factual record apart from general statements to the effect that [plaintiff] will no longer exist as a result of the termination." Id. at 803; see also In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1146 (3d Cir.1982) (holding that alleged imminent threat of bankruptcy was insufficient to constitute irreparable injury where record consisted principally of general statements pertaining to refusal of franchisees to pay royalties); Medical Marketing Consultants, LLC v. Cardiac Telecom Corp., No. 06-00274, 2007 WL 1811188, at *8 (W.D. Pa. May 31, 2007) (denying injunctive relief where the court did "not have any evidence before it to suggest that the demise of [plaintiff was] imminent" as a result of defendant's alleged

breach).

Because I am not convinced that Halide will suffer an irreparable injury absent a preliminary injunction, I will deny its motion for a preliminary injunction and will dismiss Count II of Halide's second amended complaint.

An appropriate Order follows.